Good morning. When a petitioner seeks protection under the Convention Against Torture, they must show it's more likely than not that he or she would be tortured if removed to the proposed country of removal. It's a definition of torture. It must be specifically intended to inflict severe physical or mental pain or suffering. Now, when a respondent is in immigration court, they're a respondent at that time, when they put forth a CAT claim, Convention Against Torture, if that claim is granted by the immigration court but then overturned by the immigration court, that's a violation of the Convention Against Torture. The BIA, what it must do is apply a clearly erroneous standard. And in this case… What's your best evidence that a petitioner would face an individualized rather than a generalized risk of torture if she were deported? I'll answer that question. The best evidence were several, two testimonial and one in documentary evidence. First of all, the respondent or the petitioner and her mother both testified based on their own experience and knowledge about the type of torture they would face by MS-13 gang members if she was removed to El Salvador. Now, that testimonial evidence consisted of the respondent, the petitioner testifying that because she has no family in El Salvador, she had been in the United States since 2004, that if she were removed to El Salvador, that she would be homeless. It's not speculation. It would be a fact. She would have nowhere to live. The mother testified that they are aware that when people are homeless, especially women, that they are vulnerable to criminal activity by gang members. In fact, the petitioner's mother testified at her hearing that they were aware of a person, of a woman, similar situation, that was killed by gang members. And then to support these claims, the petitioner had an expert witness that came in and testified specifically about each step of this process. And it was supported by evidence. And what this expert witness testified was that these gang members in El Salvador, they target women, especially those that are homeless. That's the first step. And he gave supporting testimony for that. Including documentary evidence. He then testified that the homeless people would be vulnerable to gang members' criminal activity because they would be approached and either demanded that they participate in criminal activity or offer sexual favors in return. Now, once that's denied, which the petitioner would have done, then the petitioner would have been subject to criminal violence by the gang members. Beatings, rape, potentially murder. Again, supported by the evidence. That was the evidence that was put forth in the petitioner's hearing. It was substantial. And relief was granted by the immigration judge. Now, when the Board of Immigration Appeals looked at this case, and if we look at their order, the Board of Immigration Appeals essentially said that the immigration judge, strung together a series of suppositions without evidence to support it. That the immigration judge did that. But the record is clear that these were not suppositions. These were facts. And these facts were supported by evidence. The board focused really, in their written decision, really focused on only the testimony of the expert witness. The board said the immigration judge largely relied on the testimony of the respondent's expert witness to find that gang members would likely rape and or kill the respondent. Okay. The tone of this order is such that the immigration judge relied heavily on an expert witness. However, when these respondents at the time are having an asylum hearing, they're often criticized for not having expert witnesses. For not having corroborative evidence. For only having their own testimony. Or maybe some secondary evidence in the form of supporting documents. So when we have an expert witness, it should not be frowned upon. Because this expert witness testified and had supporting evidence to support the testimony. I didn't get any indication that the BIA frowned on having expert testimony. I understood the BIA to say that if you have suppositional steps to show that a petitioner is more likely than not to be tortured, that is not suppositional. That you had to have evidence of likelihood that each step would occur. And I was following that in Dr. Wiltberger's written statement, he opined that Ramos will likely be targeted with brutal sexual violence. At the hearing, though, what he said was Ramos could be targeted by MS-13 or Barrio 18 with sexual violence. And may also be targeted with extortion or taxation. That's correct, if I can comment. So when you have an expert witness testifying, the board seemed to turn this decision on the uses of the word could or may. With testimony, if a person was to testify that it was likely, then that would be objected to as being speculative. Because if she could, then this could happen to her. And based on her supporting testimony, it has happened to her. It's happened to her? It's happened to someone that she, like she's had experience and knowledge of someone that it's happened to. I'm sorry. What do you base your statement on that if the expert would have used the word likely, that would have been objected to? I think that that's what would have happened. I've been in that situation before. Okay, but what about this case and what he did in fact testify to and what he did not testify to? Yes, so he did say that he did use the words could and may. But when you take in totality of the evidence, which is what the BIA is supposed to do, because it's clear from their written order that their decision was based on those words could and may. I don't think you can ignore the rest of the evidence. I think the BIA did ignore the rest of the evidence as it wasn't mentioned anywhere in their written order. The only evidence that was mentioned in their written order was the testimony of the expert witness. So we have to notice and think that this turned on the words could or may. But it's a fact that this happens in El Salvador to people in her position. That was supported by testimony and documentary evidence. And it's also a fact that the Salvadoran government has taken steps to control the gang violence or to address corruption, even though they may not have been successful. Your Honor. So how can you say that the government would acquiesce to the torture? The El Salvadoran government for so long has been involved in corruption and collusion. And that's documented in the record. For them to come out after there was a treaty between these gangs where the killings did go down, that treaty is now gone. And the El Salvadoran government, if you're prioritizing remedying this situation with gang members and violence, especially against women, the El Salvadoran government simply is not even touching, scratching the surface on this. For them to, I don't think it's that the monthly homicide rate had recently dropped by half. That means 1,500 people are getting murdered instead of 3,000. That doesn't put a person in a much better position. But it's not acquiescence, is it, if the government has taken steps, even though they can't cure the entire problem? I mean, hasn't the government, for example, reported arrests, government employees for gang connections, isolated gang leaders in prison, engaged in police raids against MS-13, and they have task forces to combat these gangs? Likely, Your Honor. But I would say that... I think it's in the record, so... It's in the record. This one's not likely. This one, it is. Right. And that means that the El Salvadoran government, what they're doing and what the United States is trying to give them credit for is fixing a situation that they created, that they helped create. And to me, it's hard to give the government credit for something that sat festering for so long that you see in the order, they observed that the monthly homicide rate had recently dropped by half. Okay? That's after years and years of it being more than half. So to give the El Salvadoran government credit... That's correct. And as soon as that truce was over, that monthly homicide rate that dropped by half went back to the same levels as it was before, sometimes worse, to the point where the United States government called the MS-13 a terrorist organization. That was after the truce. So for the BIA to give credit to the El Salvadoran government and not find acquiescence, I think was an error. And that's why we're here. I think what the board did was it ignored the testimony of the respondent and her mother, and I think it was a little bit dismissive of the expert witness' testimony, simply because he used the words could and may. That's what I have. Thank you. Good morning, Your Honors. May it please the court, my name is David Shore. I represent the Attorney General of the United States. In this case, the Board of Immigration Appeals reversed the immigration judge's grant of protection under the Convention Against Torture Regulations. Explaining that the petitioner, Ms. Ramos-Nunez, presented a speculative claim based on generalized evidence of crime and corruption in El Salvador. What's our standard of review here? The standard of review, Your Honor, for all questions of fact, that is reviewing all factual determinations, is substantial evidence. We don't go back and re-weigh the findings of fact. We determine whether substantial evidence supports the board's determination that the immigration judge clearly erred. Yes, Your Honor. Yes. And as the argument that the petitioner has presented today, I apologize if there isn't an echo, it's essentially reverse engineered. It's basically the immigration judge's decision was not clearly erroneous, so the board must necessarily have erred in reversing it. And the petitioner is essentially trying to re-litigate the administrative appeal. This court's role on review is to review all findings of fact, including the finding rendered by the board, that the petitioner failed to carry her burden for substantial evidence. This court would review a legal claim of a procedural or legal error in the board's adjudication of the appeal de novo. And if the court were to find an error, would then not conduct the clear error review, but would remand for the board to do so. Petitioner, however, has not articulated an error in the board's appellate review. There's been, there's no instance cited by the petitioner of the board engaging in de novo fact finding or disregarding evidence beyond the assertions of counsel just now that the board's decision wasn't based on the record as a whole. Well, that doesn't survive the presumption of regularity, your honor. The board is presumed to have considered the evidence on the whole, the record on the whole. And here, the board did not err in reversing the immigration judge's decision. The immigration judge, indeed, overstated the evidence and set forth a chain of supposition, saying, okay, the petitioner will be homeless when she returns. As a result, she'll lack protection. And then, in turn, as a result, a gang member may attempt to make sexual advances. Her rejection of those sexual advances will result in her sexual assault or murder. And because of widespread corruption, a public official will acquiesce. And this is the precise sort of chain of supposition, of suppositions that the board has rejected in its precedent. And so, as this court is well aware, a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Here, the record taken as a whole shows that police actively combat gangs in El Salvador, sometimes with lethal force. The military assists the police in hunting gangs, even in rural areas, and that the monthly homicide rate did drop in half in 2016 after the government's counteroffensive. Gangs were designated in El Salvador as terror groups. And there are instances of corruption, yes, but the record shows that they're investigated and prosecuted. That's not to say that corruption is not a problem or that violence against women is not a problem. The record also discusses the country report, for example, the societal recognition that gender violence is a problem, and the steps that the government has taken to, in an attempt to address that problem with these specialized... Do you have any records of the instances in which this relief is given to somebody? As far as statistics of when it's granted, no, Your Honor. I don't mean you personally. I meant the United States government. Remember you told us you represented the Attorney General? I believe so. There's a yearbook, I think a DHS or ICE yearbook of asylum statistics, and I think that should have statistics on the Convention Against Torture, as well as just asylum and withholding approval. And do you know approximately how many are granted? I don't know, when it comes to Convention Against Torture. I know something like... I could answer, to the best of my recollection, Your Honor, something like close to a third of affirmative asylum applications that are filed, I think, that's before any removal proceedings are initiated against a person, people who just voluntarily put forth an application. I believe something like a third or a quarter, and that's asylum, which has a lower burden of proof, something like 25% to one-third, I believe, are granted. Okay. I apologize, I don't have better information off the top of my head. Do you think it's gettable? I'm sorry? Do you think one can find it somewhere? Yes, absolutely, absolutely. And where would that be? I would start with the DHS or ICE website. Okay. Turning to this record, and the record as a whole left the board with a definite and firm conviction that an error has occurred, where the record shows what, in certain articles, referred to as a civil war between the gangs and the government. And so this, as this court has repeatedly said in reviewing for substantial evidence, that this type of generalized evidence does not establish that the government is acquiescent to criminal acts by street gangs. And this court has stated, evidence of widespread gang-related crime fails to compel a finding that a particular CAT applicant has carried his or her burden because crime affects all segments. And even a person who's an attractive target to gangs, or a person who the police may view unsympathetically, like a former gang member, the generalized report of gang-related violence fails to compel a finding of torture or acquiescence in torture because officials combat gang crime. And reports of ineffective policing and societal corruption fail to compel a finding of acquiescence because a particularized showing of acquiescence is required. And there hasn't, that simply wasn't proffered here. What we have is corruption. Therefore, there will be acquiescence. More is required. So for all of these reasons, the court should deny the petition for review because substantial evidence supports the board's determination. The petitioner's effort to re-litigate her administrative appeal and broad allegations of unspecified error by the board or ignoring evidence fail to overcome the presumption of regularity. Unless there are questions. Thank you. The government urges the court to deny the petition for review. If I may just briefly, the standard of review here is substantial evidence standard. And this panel, you know, they must uphold the BIA decision if it's supported by reasonable, substantial, and probative evidence in the record considered as a whole.  However, under the same standard, this panel can rule against the board if there's evidence to support a contrary conclusion that compels this panel to disagree with the board. So there is an exception. It's not written in stone. I thought that was just the standard of review. That's the standard of review. So substantial, I mean, we can rule against the board if we find that substantial evidence doesn't support. Yes. Yeah. I'm just addressing that because that was addressed by counsel. Right. And again, in rebuttal, if we look at the record as a whole, there is substantial evidence that should compel this panel to disagree with the board. The substantial evidence comes in the form of the testimony by the petitioner, the testimony by the petitioner's mother, the testimony by the expert witness, supporting documentary evidence that leads anyone to believe, or hopefully this panel to believe, that she qualifies for this protection. Now, in regards to government acquiescence, it's pretty simple. There is supplementary evidence in the record that shows widespread violence against women and widespread targeting of the poor, both of which what the petitioner would be. She's a woman. She would be homeless. There's no family support there for protection or financial support, none whatsoever. And the immigration judge considered this. The board ignored it. That virtually high percentage of sexual assaults against women go unpublished in El Salvador. This isn't about them, about the government combating, you know, having a civil war with the gang members. This is about them protecting its citizens, in which they have historically failed to do so. So I think when we, when one looks at El Salvador's ability, willingness to protect its citizens, they fail. And because they fail, they acquiesce. This isn't just, the acquiescence isn't just based on collusion or corruption. It's based on a failure and an ignorance. And for that, this panel should be compelled to consider the substantial evidence in favor of the petitioner, the fact that El Salvador acquiesces to what could happen and what will likely happen. Because what the statute calls for, it's not an absolute. It says more likely than not. It doesn't say it's going to happen. It must happen 100%. It's more likely than not. It's not an absolute standard. And so based on this record as a whole, it's more likely than not that this petitioner will suffer torture if returned to El Salvador. Thank you. Thank you very much. I will ask our clerk to adjourn court and then we'll come down and say a load of the lawyers. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Allyson K. Duncan, Stephanie D. Thacker